## Nussbaum v. Louis P. Hyman & Company.

(Decided December 7, 1926.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Partnership—Reference to Master Commissioner for Settlement
of Partnership Accounts Held Unnecessary, where Issues were
Simple.—In an action for balance due on open account, with coun-
terclaim for share of profits on certain transactions, referece to
master commissioner for settlement of partnership held unneces-
sary where partnership was conducted without expense and issues
were simple.

JOSEPH SOLINGER for appellant.

FRED STARCK and WALTER LAPP for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

Louis P. Hyman sued Carl Nussbaum for $1,356.78,
balance due on an open account running from May 31,
1923, to April 8th, 1924. Various pleadings were filed,
and finally, by a second amended and substituted answer
and counterclaim, defendant traversed the allegations of
the petition and pleaded as a counterclaim that under an
agreement between them he was to receive 25% of the
profits on a certain lot of iron and brick purchased by
plaintiff from the Indiana reformatory at Jeffersonville,
Indiana, for the sum of $5,050.00, and which he sold at a
profit of $5,950.00; that defendant's share of the profits,
$1,487.50, was due and unpaid. Second, that plaintiff had
converted to his own use three trucks of pipe belonging
to the defendant of the value of $900.00. Third, that
plaintiff had converted to his own use a carload of mate-
rial belonging to the defendant of the value of $783.00.
Fourth, that plaintiff wrongfully caused certain loaded
cars of material belonging to defendant to be unreason-
ably detained in the yards at Jeffersonville, Indiana, by
which plaintiff was required to pay $79.00 demurrage.
Fifth, that plaintiff sold and charged to him a certain
boiler for $75.00 which was not delivered. The aggregate
of the items charged in the various paragraphs of the
counterclaim was $3,324.50; it being further admitted in
this paragraph that plaintiff was entitled to credit on cer-
tain items charged in his account aggregating $1,138.50,

leaving a balance claimed, to be due defendant of $2,186.00, for which he sought judgment over. The case was transferred to equity and much proof was taken. In his testimony defendant admits all the items charged in plaintiff's account, but there is quite a conflict in evidence as to some of the items charged in the counterclaim. It appears that the state of Indiana had sold to Colgate & Co. the grounds and certain buildings occupied by the state reformatory; that some buildings were not included in the sale, and these were being junked by the state; that a number of persons were present at the sale of some of this material; that plaintiff, defendant and two or three others bought certain scrap material and immediately sold it to the Louisville Scrap Material Company at a price realizing $600.00 profit; that the superintendent in charge of the wrecking operations would not sell the scrap without the purchaser also took the bricks in the houses to be razed, estimated at 1,200,000, and which were priced at $5.01 per thousand; after consultation the parties agreed to take both. The Louisville Scrap Material Company took over the scrap and paid Hyman, and he in turn paid the reformatory therefor; it being agreed at the time that he should hold the $600.00 profit until the result of the brick transaction was determined. The parties considered the price of the bricks as being low, but under the contract these had to be removed by December 10th, and as removing entailed much expense they determined to sell them in the wall. Nussbaum found a purchaser for 200,000 bricks at $6.50 per thousand; the remainder, amounting to 900,000, were sold by Hyman to various parties for $5.00 per thousand. It is claimed by Nussbaum that the purchase price of both bricks and scrap material was $5,050.00; that the sale to the Louisville Scrap Material Company netted a profit of $600.00 on the entire deal, consequently all sums received from the sale of bricks were profit; that those sold by him realized $1,300.00 and those sold by Hyman, $4,500.00, which, added to the net profit of $600.00 from the scrap deal, aggregated $6,400.00, his interest being $1,600.00. This is based on Hyman's inability to remember the exact sum paid the reformatory, and on the further fact that the books of that institution showed the sum of $5,050.00 being paid to it by L. P. Hyman about that time.

On the other hand, Hyman testifies that he paid only for the scrap material; that the price of the bricks was

paid direct to the reformatory by the various purchasers as the walls were dismantled and the number of bricks ascertained, at the rate of $5.01 per thousand.

It does not appear that any complete records were kept of this material, but all parties agree that the reformatory fixed the price of $5.01 per thousand on the bricks, and that 1,200,000 bricks at this price would have cost over $6,000.00, exclusive of the scrap material, which was the original item bid on, hence it cannot be thought for a moment that the cost of the entire purchase did not exceed $5,050.00. Under this evidence the chancellor was of the opinion that the only profit shown on the brick proposition was on the lot of 200,000 sold by Nussbaum or a profit of $300.00, to be divided between the members of the pool. In this we concur.

There is a dispute as to whether there were four or five parties to the agreement. The court found that there were five and that Nussbaum's profits should be one-fifth, and we believe this correct. 2. Subsequently Nussbaum purchased the scrap material from the Louisville Scrap Material Company and handled the scrap himself. Hyman also made other purchases of similar material and they entered into a working agreement, perhaps a partnership, as to these matters, but it appears, however, that each retained entire control and paid the expenses of his own operation. This dual relation gives rise to some of the disputed items in this case, though it does not appear that a determination of these matters involves a consideration of that partnership.

In the wrecking operations at Jeffersonville Nussbaum's material was placed near that of Hyman's. In moving this to Louisville Hyman carried a truckload of Nussbaum's scrap to his yard. Nussbaum claims that there were three loads so taken and that they were valuable pipe. Hyman admits that one was so taken by mistake, but claims that it was merely scrap. The chancellor upheld Hyman's contention and fixed the value of this load at $34.00, for which he credited Nussbaum. While there is some conflict in the evidence, we think this ruling correct.

The evidence indicates very clearly and the chancellor held that the carload of material which Nussbaum claims was converted was a car of material belonging to Hyman and in which Nussbaum had no interest. Hyman admitted that he had sold Nussbaum a boiler for $75.00,

which he had not delivered, and the chancellor credited Nussbaum by this, but further found that Nussbaum's claim to reimbursement for $79.00 was not supported by the evidence and disallowed it. In this we think he was correct. Hyman admitted that there was due Nussbaum $61.20, his one-fifth profit on a truckload of iron bought and sold in partnership, and this was allowed by the chancellor. The result of the chancellor's findings was to reduce plaintiff's original claim by partnership profit on scrap, $120.00; profit on brick $60.00; boiler item, $75.00; truckload of scrap, $34.00; profit on truckload of iron, $61.20; total $350.60. These were deducted from $1,-356.78, the balance claimed in plaintiff's petition, leaving a balance of $1,006.58, for which judgment was rendered in favor of plaintiff, with interest from date of the filing of the petition. For the reasons indicated, we think this is correct.

It is further urged that the court erred in not referring this action to the master commissioner for a settlement of the partnership accounts. However, as we have seen, the second partnership, if such existed, was not involved. The first partnership was conducted without expense other than first cost, and a settlement of it seems to have been agreed on by the other partners. There is no substantial controversy over the sale price of scrap and bricks, and the only real issue in the matters arising out of that partnership was as to the cost of these. The defendant estimates his profits on the basis of the difference between it and the amount of sales, and embraced this in a single item of his counterclaim without asking a reference for settlements of the partnership accounts, and the court did not err in disposing of the matter as he did.

Wherefore, perceiving no error, the judgment is affirmed.